IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACQAUS L. MARTIN, ) | |
| ) | |
| Plaintiff, ) | 4:03cv3130 |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| OTHA SERRELL, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the following pending motions: (1) filing nos. 81 and 95, the Motions to Compel filed by the plaintiff, JacQaus L. Martin; (2) filing no. 96, the Motion to Dismiss filed by defendants-Serrell, Behering, Tomek, Hopkins, Britten, Lemar, Rohlander, Thompson, Wilson, and Anson; (3) filing nos. 98 and 99, the plaintiff's Motions for Writ of Mandamus; and (4) filing no. 100, the Motion for Summary Judgment filed by defendants-Clapper and Crosby.  This litigation arises out of a strip search of the plaintiff, including a visual body cavity search, on October 24, 1999[1].  The plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging that the search of his person on October 24, 1999 lacked a reasonable basis or probable cause, that the search constituted a sexual assault, and that the defendants used excessive force in the course of the search.

**Videotape**

The plaintiff has attempted without success to view the videotape of the search.  In filing nos. 81 and 95, he seeks sanctions for the defendants' failure to produce the tape, and in filing nos. 98 and 99, he seeks a Writ of Mandamus requiring the court to order

---

[1]In his complaint, the plaintiff alleges that the search occurred on October 22, 1999. However, the grievances filed by the defendants as exhibit 2 to filing no. 102 indicate that the search occurred on October 24, 1999.

production of the tape. With regard to the plaintiff's requests to view the videotape of a similar body cavity search in Case No. 4:03cv3101, this court recently entered the following Order (filing no. 92 in Case No. 4:03cv3101), in pertinent part:

> At approximately the same time as the court entered the Memorandum and Order of March 25, 2005 (filing no. 85), the defendants filed their Motion for Summary Judgment. In the materials supporting the summary judgment motion, the defendants describe the contents of the videotape, and, as directed, they have filed a copy of the videotape with the court. Thus, the videotape is presently available to the defendants and to the court, but not to the plaintiff, and a potentially dispositive motion relies in part on the video. Recently, the plaintiff has made the point (filing no. 87), that he should be allowed to verify the content, context and authenticity of any pictorial depiction of the search considered by the court. In light of the foregoing and to enable the plaintiff to respond to the pending Motion for Summary Judgment, the plaintiff must now be allowed to view the videotape, to take notes, and to prepare his arguments in opposition to the defendants' motion for summary judgment, as well as, if he so wishes, to submit his own motion for summary judgment.
>
> THEREFORE, IT IS ORDERED:
> ....
> 4. That by no later than June 15, 2005, the plaintiff shall be taken to a facility governed by the Nebraska Department of Correctional Services ("DCS") or, if DCS officials prefer, to the offices of the defendants' counsel, the Nebraska Attorney General, to view the videotape of the May 5, 2000 search; the plaintiff shall be allowed to take notes, and a person approved by DCS shall assist the plaintiff in rewinding, pausing and otherwise operating the video equipment to enable the plaintiff sufficient opportunity to review the video and take notes ....

For the same reasons stated above, the plaintiff will be granted an opportunity to view the videotape of the search on October 24, 1999 which is the subject of this litigation. Therefore, on the day (or within the period in which) the plaintiff views the videotape of the May 5, 2000 search which is the subject of Case No. 4:03cv3101, he shall also be entitled to watch the videotape of October 24, 1999, and take notes. Filing nos. 81, 95, 98 and 99 are granted to that extent and are otherwise denied.

**Exhaustion**

In filing no. 100 and supporting brief, defendants-Clapper and Crosby contend that the plaintiff failed to exhaust his administrative remedies properly. Although the plaintiff filed Step One and Step Two grievances, the defendants maintain that the plaintiff misused the grievance procedure by designating them as "emergency" grievances. According to the defendants, the plaintiff was in no "immediate danger of personal injury," and therefore, his grievances should be disregarded and his case should be dismissed for failure to utilize the non-emergency grievance procedures.

However, the Eighth Circuit has already taken the opposite position in this case. As reflected in filing nos. 2 through 12 and 25, this court originally denied the plaintiff leave to proceed in forma pauperis ("IFP") in this action because he has long been subject to the "three-strikes" provision of the Prison Litigation Reform Act, and, in the court's view, this case did not meet the exception for "imminent danger of serious physical injury," 28 U.S.C. § 1915(g). Section 1915(g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, **unless the prisoner is under imminent danger of serious physical injury**.

(Emphasis added.) The Eighth Circuit Court of Appeals reversed (filing no. 25) and remanded this case with directions to allow the plaintiff to proceed IFP. Therefore, the appellate court must necessarily have found that the plaintiff did meet the exception for "imminent danger of serious physical injury." To adopt the defendants' view that the

3

plaintiff was in no immediate danger of personal injury would be to ignore the Eighth Circuit's finding to the contrary.

### Degree of Force

The defendants also assert that prison officials are entitled to use the degree of force reasonably necessary to maintain discipline and security. However, the court cannot determine whether the defendants used reasonable force until the court views the videotape, and the court will not view the videotape until the plaintiff has had an opportunity to do so. Therefore, filing no. 100, the defendants' Motion for Summary Judgment, will be taken under advisement until the plaintiff has had an opportunity to view the videotape and a reasonable time in which to respond to filing no. 100 and submit his own summary judgment motion if he wishes to do so.

### Service of Process

In filing no. 96 and supporting brief, defendants-Serrell, Behering, Tomek, Hopkins, Britten, Lemar, Rohlander, Thompson, Wilson, and Anson state that each has been served only in his official capacity and not in his individual capacity. However, the records of this case indicate that a clerk at the Nebraska State Penitentiary signed for the individual-capacity summons forms when delivered by the U.S. Marshal, but later protested that she was not authorized to do so on behalf of the defendants. In filing no. 69, the court quashed service but authorized the plaintiff to attempt service again. Filing nos. 84-93 reflect service of process on the defendants in their official capacity. The plaintiff apparently did not understand that he needed to serve the defendants again in their individual capacity. He will be given another opportunity to do so.

As Chief Judge Joseph F. Bataillon recently observed in similar circumstances, such resistance to service of process causes the court to incur substantial expense. See filing no. 31 in Case No. 4:04cv3174, Moore v. Kohl (D. Neb. Jan. 10, 2005):

> The summonses for Dr. Kohl and Mr. Danapher were properly directed to them at the DCS Central Office, but the defendants did not receive the documents directly from the Marshal. Instead, in each case, a receptionist or other co-worker accepted the summons for each of the three defendants. Now, the defendants in their individual capacity assert that the co-workers who accepted their summonses had no authority to accept service of process on their behalf. Such maneuvering wastes the Marshal's time and creates substantial unnecessary cost for the court.[2]
>
> > [2]The U.S. Marshal charges for service of process. The court can shift to the defendants in their individual capacity the expenses of service of process by simply sending each defendant by first-class mail a Waiver of Service of Summons form, which, if not signed, will cause the defendant, in his or her individual capacity, to incur personal liability for all costs of service of process thereafter.
>
> Persons who are not authorized to accept a summons and complaint on behalf of a co-worker should not do so. A defendant state employee, in his or her individual capacity, may stand on the defendant's right to deny an office receptionist or other co-worker authority to receive a summons on the defendant's behalf. However, it is the defendant's responsibility to warn co-workers at the defendant's place of employment that they have no authority to accept a summons on the defendant's behalf. This case is particularly egregious because all defendants had been served in their official capacity and knew from the face of the accompanying complaint to expect individual-capacity service. However, each defendant failed to notify co-workers to refuse the defendant's individual-capacity summons and instead allowed co-workers to mislead the Marshal. In such circumstances, the court merely reissues a new summons so that the Marshal may again attempt service.

In filing no. 100 and supporting brief, defendants-Clapper and Crosby contend, citing filing no. 68, that all other defendants have been dismissed from this case. However, the defendants misread filing no. 68 and ignore filing no. 69. In filing no. 68, the court affirmed an Order by the Magistrate Judge denying as moot the plaintiff's motion to add the Nebraska Department of Correctional Services ("DCS") as a defendant, because DCS was

5

already a party. In filing no. 69, the court dismissed defendants-Kenney and Feeken from the case, but permitted the plaintiff to serve the other defendants in their individual capacity again. The plaintiff misdirected the forms for service of process on the individual-capacity defendants to the address for official-capacity service, i.e., the Attorney General's office. Because the Attorney General does not wish to accept service on the defendants in their individual capacity, the plaintiff will be granted another opportunity to serve the individual-capacity defendants again.

THEREFORE, IT IS ORDERED:

1. That filing nos. 81, 95, 98 and 99 are granted to the following extent and are otherwise denied:

   a. By no later than June 15, 2005, the plaintiff shall be taken to a facility governed by the Nebraska Department of Correctional Services ("DCS") or, if DCS officials prefer, to the offices of the defendants' counsel, the Nebraska Attorney General, to view the videotape of the October 24, 1999 body cavity search; the plaintiff shall be allowed to take notes, and a person approved by DCS shall assist the plaintiff in rewinding, pausing and otherwise operating the video equipment to enable the plaintiff sufficient opportunity to review the video and take notes; and

   b. The plaintiff shall have until July 25, 2005 to respond to the defendants' Motion to Dismiss and Motion for Summary Judgment (filing nos. 96 and 100) and, if he wishes, to file his own summary judgment motion;

2. That the plaintiff has exhausted his administrative remedies; and the rest of the defendants' Motion to Dismiss and Motion for Summary Judgment (filing nos. 96 and 100) are taken under advisement until after July 25, 2005,

3. That the plaintiff may serve the defendants, in their individual capacity, as follows:

   a. The Clerk of Court shall send the plaintiff summons forms and Form 285s for individual-capacity service on defendants-Serrell, Behering, Tomek,

6

Hopkins, Britten, Lemar, Rohlander, Thompson, Wilson, and Anson; the plaintiff shall return the completed forms to the court by June 10, 2005 to be issued by the Clerk of Court and forwarded to the U.S. Marshal;

b.  The U.S. Marshal shall serve each summons and complaint within three weeks thereafter without payment of costs or fees; service may be by certified mail in the discretion of the Marshal; and

c.  Service by publication will be considered if a defendant cannot otherwise be served.

DATED this 23rd day of May, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge