IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACQAUS L. MARTIN, | ) |
| Plaintiff, | ) 4:03cv3130 |
| vs. | ) MEMORANDUM AND ORDER |
| UNKNOWN SERRELL, et al., | ) |
| Defendants. | ) |

This matter is before the court on the parties' cross-Motions for Summary Judgment concerning the legality of a visual body cavity search of the plaintiff, JacQaus L. Martin, on October 22, 1999, while he was a prisoner in the segregation ("control unit") of the Nebraska State Penitentiary ("NSP") (see filing nos. 100, 116 and 141). Also pending before the court are: filing no. 136, the plaintiff's Motion for Writ of Mandamus to require the court to rule on his Motion for Summary Judgment; filing no. 138, the plaintiff's Objection to (Motion for Reconsideration of) the court's Memorandum and Order of August 23, 2005 (filing no. 135) dismissing certain defendants who could not be located and served with process after several extensions of time for that purpose; filing no. 148, the plaintiff's Motion to Show Damages; filing no. 151, the plaintiff's Motion to Admit Evidence into the Record; and filing no. 152, the plaintiff's Motion to Compel a ruling on his summary judgment motion.

As a preliminary matter, filing no. 136 is denied as moot because this Memorandum and Order constitutes a decision on the parties' cross-motions for summary judgment. The same is true for filing no. 152. Filing no. 138 is denied because the court has no ability to locate former employees of the Nebraska Department of Correctional Services in order to aid the plaintiff in serving such persons in their individual capacity. The court does

everything it can legitimately do, within the court's power, to assist pro se prisoner plaintiffs proceeding in forma pauperis to accomplish service of process on persons who remain employed by the State or a political subdivision of the State. However, the court cannot become an advocate for, or agent of, either side of a case, and, as a result, tracing defendants who have left their former governmental employment must be left to the devices of a plaintiff and his family, friends or agents.[1]

Filing no. 148, the plaintiff's Motion to Show Damages, and filing no. 151, the plaintiff's Motion to Admit Evidence into the Record, are granted to the following extent. The proffered evidence is accepted for filing instanter; the documents are incorporated into the record of this case, and the evidence has been considered by the court in the context of the parties' pending motions for summary judgment.

This is one of three cases in which the judges of this court have recently considered the plaintiff's challenges to visual body cavity searches conducted while the plaintiff was in segregation at the NSP. See also Case Nos. 4:03cv3100 and 4:03cv3101. As to inmates in NSP segregation, visual body cavity searches are conducted routinely upon certain events and also upon individualized suspicion. See O.M. 203.001.114 (attachment to filing no. 151). Case Nos. 4:03cv3100 and 4:03cv3101 dealt with the routine searches which occur upon exit from and re-entry into the secure part of the control unit.

This case concerns a policy of searching inmates in the control unit who have been placed on property and sharp object restrictions by reason of a mental health watch. In

---

[1]Thus, in filing no. 135, the court dismissed defendants-Serrell (or Serrel), Lemar, Thompson, Wilson, Behering and Tomek, each in his individual capacity only, from this litigation. See Fed. R. Civ. P. 4(m) (time limits on service of process).

2

addition, the search of the plaintiff on October 22, 1999 occurred by virtue of a more particularized concern that the plaintiff may have secreted contraband, posing a danger to himself, when he resisted two direct orders to accept hand restraints after a corrections officer came to search the plaintiff's cell in connection with the property and sharp object restrictions.

The plaintiff raises many challenges to the search. First, he attacks the "property restriction" as pretextual because NSP officials removed nothing from his cell except legal papers. Second, the plaintiff refutes the defendants' reliance on "security" concerns to justify the search because, in the plaintiff's view, visual body cavity searches are justified when an inmate has had contact with visitors or facilities outside the institution, but not otherwise. Third, the plaintiff contends that because corrections staff physically touched his genital and anal areas, they sexually assaulted him. Fourth, the plaintiff alleges excessive force. Fifth, the plaintiff claims a denial of adequate medical care because the nurse who evaluated him after the search did not, in his view, respond appropriately. In general, the plaintiff views the search as without penological purpose and, thus, by inference, intended to harass or retaliate against him because of his legal endeavors and/or because of his request to make a crisis telephone call.

The court appreciates that "strip searches involving the visual inspection of the anal and genital areas [are] 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission ....'" Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983) (citations omitted). The United States Supreme Court has established a balancing test for evaluating whether a

3

particular strip search of a detainee or prisoner met the requirements of the Fourth Amendment.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted ....  A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record ... and in other cases.

Bell v. Wolfish, 441 U.S. 520, 559 (1979).  Thus, prison officials do not have carte blanche, but neither must they have probable cause to perform such a search.  Id. at 560.

### Sexual Assault / Touching

Ordinarily, if an inmate cooperates, a strip search at the NSP involving visual inspection of body cavities involves no touching of the prisoner, who is supposed to remove his clothes, bend over, lift his testicles, spread his own buttocks, and allow visual inspection of his genital and anal areas.  However, when the plaintiff refused two direct orders to submit to restraints, a "use of force team," assembled pursuant to NSP O.M. 116.002.101 ("Use of Force") (see "cover sheet," attachment to filing no. 151),[2] placed restraints on the plaintiff and conducted the search.

Visual body cavity searches have been upheld when conducted pursuant to constitutionally reasonable policies.  See, e.g., Bell v. Wolfish, 441 U.S. 520 (1979) (policy of conducting visual body cavity searches of all pretrial detainees after contact visits with

---

[2]The NSP O.M. 116.002.101 "cover sheet" authorizes use of force procedures, among other situations, "[t]o ensure that inmates carry out lawful orders."  (Filing no. 151.)

4

persons outside the prison upheld); Peckham v. Wisconsin Dept. of Corrections, 141 F.3d 694, 695-97 (7th Cir. 1998) (rule authorizing strip searches when a prisoner moved into segregation or when time was tacked onto a prisoner's term in segregation did not violate the Fourth or Eighth Amendment); Franklin v. Lockhart, 883 F.2d 654, 656 (8th Cir. 1989) (policy requiring visual body cavity searches of inmates on punitive status, in administrative segregation, and in need of protection justified by security concerns); Goff v. Nix, 803 F.3d 358 (8th Cir. 1986) (visual body cavity searches of all inmates as a condition of any movement outside their living unit or outside the confines of the penitentiary justified notwithstanding intrusiveness), cert. denied, 484 U.S. 835 (1987).  See also Elliott v. Lynn, 38 F.3d 188, 191 (5th Cir. 1994) (visual body cavity search in presence of other inmates and correctional officers was reasonable in light of legitimate security concerns), cert. denied, 514 U.S. 1117 (1995).  As the legal validity of a particular visual body cavity search is subject to a balancing test, it is clear (1) that such a search is not, solely by reason of its intrusive nature, an illegal sexual assault, and (2) that a visual body cavity search does not per se violate the Fourth, Eighth or Fourteenth Amendments to the United States Constitution.  To avoid the physical touch of a corrections officer, the plaintiff had only to comply with the directive that he cooperate in the search by making his own genital and anal areas briefly available for visual inspection.

## Excessive Force

The videotape of the search does not reveal the kind of unnecessary and wanton infliction of pain prohibited by the Eighth Amendment.  See Whitley v. Albers, 475 U.S. 312, 319 (1986).  On the contrary, as the videotape and the written record indicate, the use of force team, which receives training for such endeavors, methodically and rapidly

5

restrained the plaintiff. Much of the actual search is obscured on the videotape by the number of officers involved, as each officer was assigned to a part of the plaintiff's body, e.g., arm, leg, head. Nevertheless, the entire process, insofar as it could be observed, involved no excessive force, and no unduly aggressive behavior, verbal abuse or unprofessional conduct. The manner of the search was not unreasonable under Fourth Amendment standards and did not evidence a malicious and sadistic use of force to cause harm or an exaggerated and disproportionate response to misconduct, in violation of the Eighth Amendment.

### Property Restriction / Security / Penological Purpose / Pretext

Several years after the Supreme Court decided Bell v. Wolfish, the Court held that a prisoner lacks a reasonable expectation of privacy in his prison cell and thus cannot sustain a Fourth Amendment claim regarding a search of his cell. Hudson v. Palmer, 468 U.S. 517, 526 (1984). Therefore, even without the property and sharp object restrictions placed on the plaintiff in response to a directive by NSP mental health staff, NSP corrections staff had an unfettered right to search the plaintiff's cell.

Pursuant to NSP policy, an inmate is to be restrained when his cell is searched and property is removed (filing no. 143, Exh. 3 at ¶ 8). The plaintiff does not explain why that policy should be considered unreasonable. Yet he refused two direct orders to submit to restraints on October 22, 1999. By virtue of that refusal, combined with the property and sharp object restrictions recommended by NSP mental health professionals, the State's interest in maintaining prison security provided a legitimate penological purpose for the strip search to determine whether the plaintiff was concealing contraband on his person.

Maintaining institutional security is "perhaps the most legitimate of penological goals." Overton v. Bazzetta, 539 U.S. 126, 133 (2003).  See generally Wilkinson v. Austin, 125 S.Ct. 2384, 2396 (2005):  "The State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves."  See also Turner v. Safley, 482 U.S. 78, 84-85 (1987), recognizing that

> "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."... "[T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree."... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities.

(Citations omitted.)   Thus, determinations of corrections officials in regard to security considerations are entitled to substantial deference.  Bell v. Wolfish, 441 U.S. at 540, n.23: "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'"  There is no evidence of an exaggerated response in the summary judgment record of this case.

**Damages / Medical Care**

The plaintiff had no constitutional right to oppose his placement in restraints to enable his cell to be searched or to refuse a strip search after he resisted the restraints. In filing no. 148, the plaintiff has provided physician's notes from 2002 and thereafter concerning health problems he suffered while in segregation. However, none of the medical evidence specifically relates to the incident on October 22, 1999, which is the subject of this litigation.

The plaintiff also complains that the nurse who inspected his condition after the search on October 22, 1999 did so in a perfunctory manner and failed to note that he had suffered injuries. In an Incident Report of October 22, 1999 (filing no. 143, attachment to Exhibit 3), Nurse Feeken stated that, although the plaintiff complained of arm, leg and neck pain, he was able to move his fingers and feet, and his speech was clear, not slurred. Also, although the plaintiff complained of abrasions to his extremities and forehead, the nurse observed no abrasions. Without deciding whether or not the plaintiff suffered abrasions or pain as a result of the incident on October 22, 1999, the conduct of the nurse did not amount to the kind of deliberate indifference which violates the Eighth Amendment to the United States Constitution.[3]

---

[3]The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prisoner's Eighth Amendment rights are violated if prison officials show "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-07 (1976). "[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003). Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of the Eighth Amendment for cruel and unusual punishment. A plaintiff who alleges no more than his disagreement with the treatment provided to him does not demonstrate an Eighth Amendment violation. Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002).

For the foregoing reasons, the summary judgment record contains no basis on which to proceed to trial on the plaintiff's claims. See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

THEREFORE, IT IS ORDERED:

1. That filing nos. 100 and 141, the defendants' Motions for Summary Judgment, are granted to the extent consistent with this Memorandum and Order;

2. That filing no. 116, the plaintiff's Motion for Summary Judgment, is denied;

3. That filing nos. 136 and 152, the plaintiff's Motion for Writ of Mandamus and Motion to Compel a ruling on his summary judgment motion, are denied as moot;

4. That filing no. 138, the plaintiff's Objection to the court's Memorandum and Order of August 23, 2005, is denied;

5. That filing no. 148, the plaintiff's Motion to Show Damages, and filing no. 151, the plaintiff's Motion to Admit Evidence into the Record, are granted insofar as the evidence is accepted for filing instanter, the documents are incorporated into the record of this case, and the evidence has been considered by the court in the context of the parties' motions for summary judgment; and

6. That a separate judgment will be entered accordingly.

DATED this 27th day of February, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge